**STATE of Missouri, Respondent,**

v.

**Marlon REDMOND, Appellant.**

**Marlon REDMOND, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 78902.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1996.

Emmett D. Queener, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Christine M. Kocot, Assistant Attorney General, Jefferson City, for Respondent.

HOLSTEIN, Chief Justice.

Defendant Marlon Redmond was convicted of second degree murder, § 565.021,[1] and armed criminal action, § 571.015, for which he was sentenced to concurrent terms of thirty years and three years, respectively. On appeal, Redmond's principal contention was that the trial court erred in refusing to instruct the jury on voluntary and involuntary manslaughter. The Missouri Court of Appeals, Eastern District, affirmed, with one judge dissenting. The case was transferred upon the dissenting judge's certification that he deemed the majority opinion to be contrary to *State v. Newlon,* 721 S.W.2d 89 (Mo.App.1986). *Rule 83.01.* Because of the trial court's failure to give the requested

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

voluntary manslaughter instruction, the judgment of the trial court is reversed and the cause remanded for a new trial.

## I.

In February 1994, the state filed an amended information charging Redmond with one count of murder in the second degree, in violation of § 565.021.1 and one count of armed criminal action in violation of § 571.015. He was charged as a prior and dangerous offender. *§ 558.016.* The case was tried to a jury.

Von Michael Johnson, the victim, lived down the street from Redmond's mother. On May 8, 1993, Redmond was washing his car in the street in front of his mother's house. Johnson was walking his dogs down the street with Laura Sherwood, who was alleged to be the mother of Redmond's child. As Johnson and Sherwood walked by Redmond, Johnson stopped. The two men began to argue. Sherwood continued to walk past, and heard the men arguing behind her. Redmond testified that Johnson accused Redmond of treating Sherwood badly. On direct examination by his attorney, Redmond described the confrontation:

Q. And you told him that he needed to stay out of Laura's business?

A. Yes.

Q. And what did he say?

A. That's when he said, "Make me", and he reached in his pants pocket.

Q. What happened next?

A. That's when—I mean, when he reached in his pants pocket that's when I immediately got—

. . . .

Q. So he reached his hand in his pocket. What did he do with his hand in his pocket?

A. Well, he kept his hand in his pocket and he said, "Well, what are you gonna do about it?"

Q. What did you think about his hand in his pocket?

A. I thought—at that time I thought that he had a gun.

Q. And how did you feel?

A. I was scared.

Q. What did you think was gonna happen?

A. I thought that he was—he was gonna kill me or hurt me.

Q. Did you see a gun?

A. Yes, I did.

Subsequently, Redmond grabbed a baseball bat from the open trunk of the car he was washing and hit Johnson in the head, killing him. He testified to swinging the bat and hitting the victim once. Sherwood did not see the blow, but said that she heard a single crack.

Redmond then drove off, and was arrested later that day at his girlfriend's house. After his arrest, Redmond questioned a reserve police officer as to the victim's condition and stated "I can't believe this happened. I can't believe it. It just made me mad, so mad. We just had this baby. I can't believe I hit him. I can't believe this happened."

Redmond testified that he told the police about Johnson having a gun. However, according to the reserve police officer, Redmond did not mention the gun. After being read his *Miranda* rights and signing a waiver, Redmond made a voluntary written statement to the police. In that statement, Redmond also failed to mention that the victim had a gun. According to the victim's mother and an emergency room nurse, the victim did not have a weapon on his person.

Dr. Charles Short, the deputy medical examiner for St. Louis County, testified that he performed an autopsy on the victim. The cause of death was multiple skull fractures and injury to the brain. Dr. Short testified that the victim had three separate wounds to his head. The types of injuries the victim sustained were consistent with being inflicted by a baseball bat. In Dr. Short's opinion, a minimum of two blows to the victim's head by a baseball bat would account for the injuries.

The trial court refused Redmond's proffered instructions on voluntary and involuntary manslaughter but submitted an instruction on self-defense. The jury found Redmond guilty of murder in the second

degree and armed criminal action. Subsequently, Redmond filed a Rule 29.15 motion for post-conviction relief. After a hearing, the motion court entered its findings of fact and conclusions of law overruling Redmond's motion.

## II.

■■■■ Redmond contends that the trial court erred in refusing to instruct the jury on voluntary and involuntary manslaughter because there was sufficient evidence of provocation, sudden passion, and recklessness to support the submission of these offenses. Voluntary manslaughter and involuntary manslaughter are lesser included offenses of second degree murder, the crime for which Redmond was convicted. *§ 565.025.2(2).* A trial court is required to instruct on a lesser included offense if the evidence, in fact or by inference, provides a basis for both an acquittal of the greater offense and a conviction of the lesser offense, and if such instruction is requested by one of the parties or the court. *§ 556.046; State v. Mease,* 842 S.W.2d 98, 110–11 (Mo. banc 1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993).

### A. Voluntary Manslaughter

The trial court erred in refusing Redmond's proffered instruction on voluntary manslaughter because there was sufficient evidence to support an acquittal of murder in the second degree and a conviction of voluntary manslaughter.

■■■ The crime of voluntary manslaughter is defined as causing the death of another person under circumstances that would constitute murder in the second degree, except that the death was caused "under the influence of sudden passion arising from adequate cause[.]" *§ 565.023.* The defendant has the burden of injecting the issue of influence of sudden passion arising from adequate cause. *Id.* This means the issue is not submitted to the trier of fact unless supported by the evidence. *§ 556.051.*

■■■ The trial court is therefore required to give an instruction on voluntary manslaughter if there is sufficient evidence

to support a finding that the defendant caused the death of the victim under the influence of sudden passion arising from adequate cause. *State v. Boyd,* 913 S.W.2d 838, 842 (Mo.App.1995). "Sudden passion" is defined as "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation[.]" *§ 565.002(7).* "Adequate cause" is "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control[.]" *§ 565.002(1).* The offense must have been committed in sudden passion, and not after there has been time for the passion to cool. *State v. Fears,* 803 S.W.2d 605, 609 (Mo. banc 1991). Words alone, no matter how opprobrious or insulting, are not sufficient to show adequate provocation. *Id.*

The facts of the present case are similar to *Fears* and *State v. Newlon,* 721 S.W.2d 89 (Mo.App.1986), two cases in which Missouri courts have found sufficient evidence to support a finding of sudden passion arising from adequate cause. In *Fears,* the victim and the defendant were engaged in a heated quarrel, the victim poked the defendant several times with his finger, and swung at the defendant with his fist. After blocking the swing, the defendant punched the victim causing him to fall to the ground. The victim was killed by a resulting head injury. The court held that this evidence was sufficient to inject the issue of sudden passion so as to warrant a voluntary manslaughter instruction:

> The aggregate of the insulting words, offensive gestures and physical contacts that occurred during this encounter was ... sufficient to put Fears in fear of serious bodily harm, carried out in a time span insufficient for Fears' anger to cool, and sufficient for reasonable persons to have found that Fears acted under "sudden passion."

*803 S.W.2d at 609.* Thus, the court found that a physical altercation in which the victim swung his fist at the defendant constituted adequate provocation.

*State v. Newlon* is similar to the case at bar in that in both cases the victim was alleged to have provoked the defendant by brandishing a weapon during a heated argument. In *Newlon,* the victim and the defendant were arguing. The defendant testified that the victim verbally threatened her and pulled a kitchen knife, which scared the defendant. Consequently, the defendant shot and killed the victim. Finding evidence of sudden passion arising from adequate cause, the court of appeals reversed the trial court for failing to submit a voluntary manslaughter instruction. 721 S.W.2d at 94.

■ Similarly, in the present case there was evidence of a heated argument, in which the victim confronted the defendant in a threatening manner, and scared the defendant by displaying a deadly weapon. Redmond testified that the victim approached him in a confrontational manner and an altercation ensued because the victim accused Redmond of mistreating the mother of Redmond's alleged child. According to Redmond, the victim displayed the handle of a gun. Redmond further testified that, as a result of this confrontation, he feared for his life and consequently struck the victim with a baseball bat.

■ The jury could accept Redmond's testimony, or the jury could reject it as unbelievable. It is not, however, for the court to determine Redmond's credibility, nor to weigh the evidence in any other respect. *State v. Stepter,* 794 S.W.2d 649, 654 (Mo. banc 1990). The court's role is to determine whether the testimony presented would support a finding that the defendant killed under the influence of sudden passion arising from adequate cause.

The threatening confrontation described by Redmond along with the showing of a gun is the type of provocation that could cause a reasonable person to lose self-control. Thus, the evidence presented is sufficient to inject the issue of sudden passion arising from adequate cause. This being so, the trial court committed reversible error in failing to submit a voluntary manslaughter instruction upon the defendant's request.

■ Citing *State v. Jennings,* 778 S.W.2d 294 (Mo.App.1989), and *State v. Simmons,* 751 S.W.2d 85 (Mo.App.1988), the state argues that Redmond was not entitled to a voluntary manslaughter instruction because the jury was instructed on self-defense. In *Jennings,* the victim's conduct relied upon as support for the self-defense instruction was the same conduct relied upon as the cause of the sudden passion. The court found the two theories to be mutually exclusive and inconsistent. 778 S.W.2d at 296 (citing *Simmons,* 751 S.W.2d at 91–92). The court reasoned that having rejected the defendant's testimony for acquittal based on self-defense, the jury may not accept it for mitigation to the lesser degree offense based on sudden passion. *Id.*

■ A jury may accept part of a witness's testimony while disbelieving other portions. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). A jury may also draw certain inferences from a witness's testimony, but reject others. The jury in this case might accept Redmond's testimony that he saw the gun and conclude that he acted under sudden passion arising out of fear for his life. However, the jury might determine that Redmond's apprehension of the harm was unreasonable or that the amount of force used in his defense was unreasonable. One who unreasonably believes that he must use force to defend himself from an imminent attack or uses an unreasonable amount of force cannot escape conviction on grounds of self-defense. § 563.031. But, the jury may nevertheless believe that the confrontation and the showing of the weapon constituted adequate provocation by the victim, which impaired the defendant's self-control and aroused him to kill in sudden passion. Unlike self-defense, there is no requirement that the defendant act reasonably to have his intentional killing reduced from murder to voluntary manslaughter.

■ Thus, a jury could rationally reject self-defense and find sudden passion arising from adequate cause based on Redmond's testimony. *Jennings* and *Simmons* are overruled to the extent those decisions could be read to hold that an instruction on self-defense and an instruction on sudden passion

based on the same testimony are inherently inconsistent and should not be given together. Each instruction should be evaluated separately and should be given if supported by the evidence, without regard to whether the other instruction is also being given.

### B. Involuntary Manslaughter

Redmond also contends that the trial court erred in refusing his proffered instruction on involuntary manslaughter. He contends that there was evidence of recklessness to support an involuntary manslaughter instruction. Redmond's assertion that a reasonable juror could have found that he acted with mere recklessness in striking the victim in the head with a baseball bat is highly questionable. See *State v. Hamlett*, 756 S.W.2d 197, 201 (Mo.App.1988). However, because the evidence may develop differently on retrial, we need not address the issue of whether Redmond is entitled to an instruction on involuntary manslaughter.

### Conclusion

Because the evidence warranted an instruction on voluntary manslaughter, the trial court's denial of Redmond's request for such an instruction was error. Redmond is entitled to a new trial before a properly instructed jury. Redmond's conviction of murder in the second degree is, therefore, reversed, and the cause remanded for a new trial. Reversal of Redmond's conviction of murder in the second degree also requires reversal of his conviction of armed criminal action, as conviction of the latter requires the commission of an underlying felony. § 571.051.1; *State v. Weems*, 840 S.W.2d 222, 228 (Mo. banc 1992). Defendant also contends that the motion court erred in denying his Rule 29.15 motion for post-conviction relief based on his claim of ineffective assistance of trial counsel. In view of our disposition of the case, we need not pass upon the merits of this claim. Reversed and remanded as to conviction and sentence; dismissed as to post-conviction motion.

All concur.