**STATE of Missouri, Plaintiff–Respondent,**

v.

**John Daniel FOUTS, Defendant–Appellant.**

**and**

**John Daniel FOUTS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 20019, 20748.**

Missouri Court of Appeals, Southern District, Division Two.

Feb. 11, 1997.

---

Judith C. LaRose, Asst. Public Defender, Columbia, for defendant–appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Blegen, Asst. Atty. Gen., Jefferson City, for plaintiff–respondent.

PARRISH, Judge.

John Daniel Fouts (defendant) was convicted following a jury trial of murder in the

second degree, a class A felony. § 565.021.[1] Following sentencing defendant filed a motion for post-conviction relief pursuant to Rule 29.15. An amended Rule 29.15 motion was filed and denied without an evidentiary hearing.

Defendant appeals the judgment of conviction in his criminal case (No. 20019) and the order denying his Rule 29.15 motion (No. 20748). The appeals were consolidated as required by Rule 29.15(*l*) as it existed on the date defendant's Rule 29.15 motion was filed. *See* Rule 29.15(m).[2] The judgment of conviction in No. 20019 is reversed because the trial court failed to instruct the jury on voluntary manslaughter as a lesser included offense of murder in the second degree. The case is remanded for new trial. The appeal in No. 20748 is dismissed.

*No. 20019*

*Facts*

Tim Tzavidis was a high school student who became acquainted with defendant, defendant's wife, Mandy, and their child, Meredith, when he and his mother lived in the same trailer park in Springfield where defendant and defendant's family lived. Tim and his mother moved from the trailer park sometime before the summer of 1993.

During the summer of 1993 Tim helped defendant with plumbing jobs. On August 20, 1993, defendant picked Tim up at Tim's mother's residence. Defendant told Tim he needed help with a job. They were travelling in defendant's truck. Defendant was driving. He drove to a secluded area and stopped.

Tim explained:

He asked me to get out of the truck and said that he had something to show me. And I got out of the truck, and we went around to the back of the truck, and he opened it up, and there was a body in the back of the truck.

Tim recognized the body as defendant's wife, Mandy. Defendant said he and Mandy got into a fight; that she threw something at him

and he got mad and hit her. Defendant and Tim heard the sound of a truck approaching. They got back in defendant's truck, drove around awhile, then returned to the trailer where defendant lived.

Defendant had a barrel in the back of his truck. He had Tim help unload the barrel and place it near the tailgate of the truck. Tim held the barrel while defendant put the body in it. Defendant sealed the barrel, pushed it to a corner of a carport and stacked items on top of it.

Defendant and Tim went into defendant's trailer. Tim told the trial court, "[W]e waited there for a while, a few hours, until about 10:00, let's say, maybe later, probably more like 11:00, and then he got some tools and a couple of flashlights, we went out to the carport and removed some of the skirting from the base of the trailer." They removed the items that were stacked on the barrel, pushed the barrel under the trailer and replaced the skirting. Defendant took Tim home.

The next morning Tim called the police and reported what had happened. A search warrant was obtained for defendant's trailer and truck. Police officers removed skirting from around the trailer and located the barrel with the body inside. They also found a large butcher knife inside the trailer in the kitchen sink and another knife with a black handle on the kitchen table.

An autopsy was performed on Mandy Fouts' body August 21, 1993, at about 4:00 p.m. Thirty-six to forty-eight hours had passed since she died. The autopsy revealed an abrasion over the left forearm; bruises on the left shoulder and shins; bruises to both sides of the face; a linear blunt-force injury across the left side of the face; an abrasion over the left cheekbone. The left eyelid was torn and the right eye and chin were bruised. There was bruising to the neck. The cause of death was found to be asphyxia. The pathologist who performed the autopsy reported the death was caused by "simply inability to breathe due to manual strangulation."

---

1. References to statutes are to RSMo 1986.

2. Defendant was sentenced June 28, 1994. He filed his Rule 29.15 motion August 28, 1995.

*The Trial*

Defendant testified. He said he worked the night of August 18; that he came home about 1:00 a.m., August 19. He said he and Mandy began fighting about 3:00 a.m. when he told Mandy he had to return to work at six or seven that same morning. He said she threw things at him—plywood covers for indentations in the floor of the trailer, bottles of beverages, towels, his shoes. Defendant said he left the trailer and sat in his truck for a while. Mandy came out and got in the truck with him. He returned to the house. Mandy followed.

According to defendant, he finally went to bed. He testified that Mandy followed him to the bedroom, then left the room. When he awoke that morning, his alarm clock was unplugged, his pager was missing and the telephone was unplugged. He said he heard Mandy talking to his boss' wife at the trailer door; he heard Mandy tell her he was not going to work. Defendant testified that he went to the door and told the woman he needed to find his pager and get his calls straightened out, then he would go to work.

After the boss' wife left, defendant said Mandy took the keys from his truck and they began arguing again. He told the court and jury he went to the bedroom to change his clothes; when he came out of the room, Mandy was holding a board and dared him to walk past her. Defendant said he went into the bathroom and closed the door; that the bathroom door flew open and Mandy, shouting threats and obscenities, told him he was not going to work. He said she still had the board in her hand; that he got up and tried to knock it out of her hand and closed the bathroom door. According to defendant she again opened the bathroom door and continued to yell. He claimed she still had the board and threw it at his right leg, causing him to fall toward the bathtub.

Defendant testified that when he left the bathroom, Mandy was in the doorway with a knife threatening him. He said she came at him with the knife; that he crouched trying to find something to throw at her. He said when she came toward him, he kicked her; that she was thrown against a fire extinguisher, then fell to the floor. He said he

walked past her; that she was coughing and making a noise like "somebody hawking something up." Defendant claimed he found his truck keys, grabbed some shoes and left.

Later, defendant returned to the trailer. When he went inside, Mandy was lying in the hallway. He tried to get her to get up, but she did not respond. Defendant testified:

And I reached down, and I grabbed her wrist. There was nothing in her wrist. I reached down and I grabbed her on the throat. There was nothing at her throat. I felt, somebody told me you could feel behind an ear, and I felt there, and finally I started shaking her head back and forth, back and forth, back and forth.

Defendant testified in detail about trying to arouse Mandy. He was asked when he first knew she was dead. He answered that he did not know. He claimed he did not know how long he stayed at the trailer after his return. He testified, "When I got home, it was light, this all went on during the light. And from when I pulled her up against me, at that point, I don't know how many hours, but it was dark." He finally left the trailer.

There was other testimony about statements defendant made after he was arrested. A detention officer at the city jail said that during a smoke break, defendant made comments about his wife. The detention officer said, "He stated that he had got in an altercation with his wife, and that she had come at him with a knife, and that he had struck her with a $2 \times 4$." The detention officer told the court and jury that defendant said he struck his wife "in the area of her neck."

Another detention officer testified that while he was taking defendant's fingerprints, defendant said he had been in a disturbance with his wife; that she came after him with a knife; that he pushed her backwards and she fell.

The wife of defendant's employer testified that defendant made statements to her after he had been arrested. She said defendant told her he was sitting on the toilet stool when Mandy came at him with a knife. Defendant told her he got up and kicked Mandy in the chest; that the kick knocked her out. Defendant said he left the trailer and re-

turned five or six hours later and found Mandy dead.

The trial court instructed the jury on the offense of second degree murder but declined to instruct them on voluntary manslaughter as a lesser included offense as defendant requested.

### Allegations of Trial Court Error

Point I contends the trial court erred in refusing to submit Instructions No. A and B to the jury to permit the jury to consider whether defendant was not guilty of second degree murder, but was guilty of voluntary manslaughter because there was evidence that Mandy Fouts hit, screamed and waived a knife at defendant. Defendant argues that this evidence supports his claim that his actions were inflamed by sudden passion arising from adequate cause; that he was entitled to have the jury instructed on voluntary manslaughter as a lesser included offense of murder in the second degree.

The trial court's verdict-directing instruction, Instruction No. 5, was patterned after MAI–CR3d 313.04 (1–1–87) without modification concerning whether defendant's actions were under the influence of sudden passion arising from adequate cause. Instruction No. 5 states:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 19th day of August, 1993, in the County of Greene, State of Missouri, the defendant caused the death of Mandi[3] Fouts by strangling her, and

Second, that defendant knew that his conduct was causing or was practically certain to cause the death of Mandi Fouts,

Third, that defendant did not act in lawful self defense as submitted in Instruction No. 7[4]. [sic]

then you will find the defendant guilty of murder in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the second degree.

If you do find the defendant guilty of murder in the second degree, you will assess and declare one of the following punishments:

1. Life imprisonment.

2. Imprisonment for a term of years fixed by you, but not less than ten years and not to exceed thirty years.

Defendant tendered Instructions No. A and B that the trial court refused. Instruction No. A was a modification of MAI–CR3d 313.04 (1–1–87) that complied with that instruction's Notes on Use (Note 4) for when evidence supports a finding of sudden passion for adequate cause that would support a voluntary manslaughter instruction.[5] It defined "sudden passion" and, in order for defendant to be found guilty of murder in the second degree, required the jury to find defendant did not cause the death of the victim under the influence of sudden passion arising from adequate cause. *See* n. 5, *supra.*

Instruction No. B was a verdict-directing instruction for voluntary manslaughter as a lesser included offense of murder in the second degree. It was patterned after MAI–CR3d 313.08 (1–1–87). It states:

If you do not find the defendant guilty of murder in the second degree, you must consider whether he is guilty of voluntary manslaughter.

If you find and believe from the evidence beyond a reasonable doubt:

---

**3.** Instruction No. 5 uses the spelling "Mandi" for the victim's name. All other references in the record on appeal, including the other instructions, spell the victim's name "Mandy."

**4.** The self-defense instruction, Instruction No. 7, was patterned after MAI–CR3d 306.06.

**5.** Voluntary manslaughter occurs when one causes the death of another under circumstances

that would constitute murder in the second degree except that the death was caused "under the influence of sudden passion arising from adequate cause." § 565.023.1(1).

"Sudden passion" is "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." § 565.002(7).

First, that on or about the 19th day of August, 1993, in the County of Greene, State of Missouri, the defendant caused the death of Mandy Fouts by strangling her, and

Second, that it was the defendant's purpose to cause the death of Mandy Fouts, and

Third, that defendant did not act in lawful self defense as submitted in Instruction No. ____,

then you will find the defendant guilty of voluntary manslaughter.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of voluntary manslaughter.

If you do find the defendant guilty of voluntary manslaughter, you will assess and declare the punishment for a term of years fixed by you, but not less than five years and not to exceed fifteen years.

■ As *State v. Redmond*, 937 S.W.2d 205 (Mo. banc 1996), explains, voluntary manslaughter is a lesser included offense of murder in the second degree. *Id.* at 207–08. *See also* § 565.025.2(2)(a).

A trial court is required to instruct on a lesser included offense if the evidence, in fact or by inference, provides a basis for both an acquittal of the greater offense and a conviction of the lesser offense, and if such instruction is requested by one of the parties or the court. § *556.046* [RSMo 1994][ 6]; *State v. Mease*, 842 S.W.2d 98, 110–11 (Mo. banc 1992), *cert. denied*, 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993).

*Id.* at 208.

To be guilty of the offense of second degree murder, a defendant must knowingly cause the death of the victim. § 565.021.1(1). For a defendant to be guilty of voluntary manslaughter, he must cause the victim's death under circumstances that would constitute murder in the second degree except that his actions were influenced by sudden passion arising from adequate cause. § 565.023.1(1). The range of punishment for murder in the second degree is imprisonment from 15 to 30 years or life imprisonment. The range of punishment for voluntary manslaughter is imprisonment from 5 years to 15 years.

■ There was evidence that defendant and Mandy Fouts engaged in a heated argument at the time defendant inflicted the fatal injury upon her. Defendant testified that Mandy approached him with a knife and threatened him with it. He also testified that she had previously stabbed him with an ice pick. Other witnesses testified that defendant made various out-of-court statements, albeit the statements were somewhat varied with degrees of inconsistency, whereby he related that the injury he inflicted was in the heat of an altercation between he and Mandy.

■ A jury could accept defendant's testimony concerning the circumstances which produced the fatal injury. The jury, not the court, determines credibility of witnesses. *State v. Stepter*, 794 S.W.2d 649, 654 (Mo. banc 1990). The court's role is to determine if testimony presented would support a finding that the victim was killed under circumstances in which defendant was under the influence of sudden passion arising from adequate cause. *Redmond, supra*, at 209.

■ Defendant requested an instruction on voluntary manslaughter. The trial court refused to give it, thereby committing reversible error. The fact that an instruction was given on self-defense is of no consequence. *Id.* at 209. Point I is well-taken. Because the trial court failed to instruct on voluntary manslaughter as a lesser included offense of murder in the second degree, as requested by defendant, the judgment must be reversed and the case remanded for a new trial.

Although Point I disposes of this appeal, other issues presented may arise when the case is retried. For that reason Points II and III warrant discussion.

Point II is also a claim of instructional error. Defendant contends Instruction No. 5

---

**6.** § 556.046, RSMo 1994, is identical to the 1986 revision of the statute.

is erroneous because it required, in order to find defendant guilty of murder in the second degree, that "defendant knew that his conduct was causing or was *practically certain* to cause the death of Mandy Fouts." Defendant argues that the instruction did not conform to § 565.021.1(1) that defines murder in the second degree as an act whereby a person "[k]nowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person." He contends the "practically certain" language in the instruction lowers the state's burden of proof from what the "knowingly caused" language of the statute requires.

█ At the outset, with respect to Point II, it is appropriate to acknowledge different holdings among districts of this court with respect to the Court of Appeals' authority to review claims that "approved instructions" are erroneous. This district has long held the giving of an approved instruction can give rise to instructional error that the Court of Appeals may address. *State v. Moss,* 789 S.W.2d 512, 518 (Mo.App.1990); *State v. Pendergrass,* 726 S.W.2d 831, 833–34 (Mo.App. 1987). There is language from the Western District, however, declaring that if an instruction follows language of MAI–CR3d, the Court of Appeals cannot declare it erroneous; that the Court of Appeals "lacks the authority to declare as erroneous pattern instructions." *State v. Turner–Bey,* 812 S.W.2d 799, 805 (Mo.App.1991). Consistent with *Moss* and *Pendergrass,* this opinion will consider Point II.

█ Defendant's claim of error in Point II is answered by § 562.016.3:

A person "acts knowingly", . . . ,

. . .

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

Instruction No. 5 stated the law as enacted by § 562.016.3. As explained in *State v. Harris,* 825 S.W.2d 644, 647 (Mo.App.1992), "'A person commits the crime of murder in the second degree if he ... [k]nowingly causes the death of another person....'"

§ 565.021(1). A person 'knowingly' causes the death of another if 'he is aware that his conduct is practically certain' to cause death. § 562.016.3(2)." Defendant's Point II has no merit.

Point III is directed to responses to questions about alleged uncharged crimes asked witnesses Tim Tzavidis, his mother, Denise Tzavidis, and defendant. Tim Tzavidis was asked if defendant gave him a reason why he didn't want Mandy to leave him. The witness answered, over defendant's objection, "That he was in some trouble somewhere with the police, and that she was threatening to call and turn him in."

Denise Tzavidis was asked and answered, over objection by defendant:

Q. Now was there any reason that the Defendant ever gave you about not wanting to let her go?

A. He was afraid that—

. . .

A. He was afraid that she'd call some place in Texas.

Q. Did he state any other reason other than that?

A. He said that he was wanted in Texas, or she said that he was wanted in Texas.

The state, on cross-examination, asked defendant, over objection, whether he had been involved in an incident with a neighbor in Denton County, Texas, in which he pulled the neighbor from an apartment and threatened him with an ax. Defendant denied being involved in such an incident and denied ever having been in Denton County, Texas.

Point III claims the trial court erred in permitting the testimony and cross-examination because the questions injected uncharged crimes into the trial; that the questions and answers suggested if defendant was guilty of other offenses, he was likely to be guilty of the offense charged.

█ Evidence a defendant committed crimes separate and distinct from the crime charged is not admissible to show the defendant is likely guilty of the charged offense

because he has a propensity to commit such crimes. *State v. Clover*, 924 S.W.2d 853, 855 (Mo. banc 1996). However, evidence of prior misconduct is admissible if it is logically relevant to the offense charged, i.e., if it has some legitimate tendency to establish the defendant is guilty of the offense for which he is on trial. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). The evidence is legally relevant if its probative value outweighs its prejudicial effect. *Id.* "The balancing of the effect and value of evidence rests within the sound discretion of the trial court." *Id.*

Generally, evidence of other, uncharged misconduct has a legitimate tendency to prove the specific crime charged when it "'tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial.'" *State v. Sladek*, 835 S.W.2d [308] at 311 [(Mo.banc 1992)] (quoting *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286, 294 (1901)).

*Id.*

 Defendant testified in response to questions asked on direct examination that the only warrant in Texas he knew about was for "two misdemeanor tickets or something that I had down there." The state, in attempting to show defendant had more serious charges pending in Texas than he admitted, undertook to show defendant had a motive to prevent Mandy from contacting officials there if she left him. Evidence of avoiding apprehension on criminal charges can constitute a motive for murder. *See State v. Mallett*, 732 S.W.2d 527, 535 (Mo. banc), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). The trial court did not abuse its discretion in determining the probative value of the questions posed outweighed their prejudicial effect.

The same is true with respect to the testimony elicited from Tim Tzavidis and Denise Tzavidis. The evidence went to the issue of motive; that defendant had reason to prevent Mandy from leaving him. Point III is denied.

### No. 20748

Defendant's appeal of the denial of his Rule 29.15 motion is moot because the judgment of conviction in No. 20019 must be reversed. *State v. Smith*, 934 S.W.2d 324, 328 (Mo.App.1996).

### Dispositions

The judgment of conviction in No. 20019 is reversed and the case remanded for new trial. The appeal in No. 20748 is dismissed.

MONTGOMERY, C.J., and SHRUM, J., concur.