

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112235 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 21SL-CR06102-01 |
| | ) | |
| MICHAEL P. OSHIA, | ) | Honorable Heather R. Cunningham |
| | ) | |
| Appellant. | ) | Filed: November 19, 2024 |

### Introduction

Michael Oshia ("Appellant") appeals from the judgment upon his conviction following a jury trial for murder in the first degree and armed criminal action. On appeal, Appellant argues the trial court erred in overruling his motion for judgment of acquittal for murder in the first degree because the State failed to establish that Appellant acted with deliberation. Appellant further argues the trial court erred in refusing to instruct the jury on voluntary manslaughter. Appellant finally argues the trial court abused its discretion in failing to exclude, as irrelevant, testimony about Appellant's experience with hunting. We affirm the judgment of the trial court.

### Factual and Procedural History

Appellant began having an affair with C.O. in March 2021.[1] Appellant subsequently asked his wife ("Victim") for a divorce. The divorce was contentious. While the divorce was pending, Appellant lived in the basement of his house, and Victim lived on the upper floors. Appellant also spent time at C.O.'s house.

On December 29, 2021, Appellant went to C.O.'s house at around 5 p.m. At around 7 p.m., Appellant told C.O. he was going to his house to let the dogs out and would come right back. After Appellant did not come back, C.O. attempted to call him on his cell phone, but she was unable to reach him. C.O. noticed that Appellant had left his new cell phone at her house and had taken his old cell phone with him to his house. Shortly thereafter, Appellant called C.O. from his old cell phone and told her, "I just wanted to tell you that I love you and to take care of my dogs." Appellant told C.O. there was an altercation, he didn't know what happened, and he stabbed Victim. Appellant did not describe the altercation to C.O.

After the stabbing, Appellant also talked on the phone with his friend, T.N. Appellant told T.N. that he stabbed Victim, he killed her, and she was dead upstairs. Appellant stated, "[Y]ou know what that means." T.N. believed Appellant was going to commit suicide. Appellant also told T.N. "everything is yours" and that the key was on top of the gun safe. T.N. believed Appellant was "getting his stuff in order" and making end of life plans. Appellant did not say anything to T.N. about Victim provoking Appellant.

Law enforcement was called, and police officers arrived at Appellant's home. The officers found Victim on the living room floor near the front door with a stab wound in her upper chest. The officers searched around the body for a knife but did not find one. Officers also went

---

[1] The personal identifying information of Victim and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

to the basement, where they found Appellant on the ground with a shotgun next to his head. Appellant was alive despite a self-inflicted gunshot wound to the head. Officers searched the kitchen and, in a closed drawer, found two knives with a reddish substance on them.

Victim's autopsy revealed no defensive injuries and determined the stab wound to Victim's chest was her cause of death. The stab wound went through Victim's breastbone and pierced two major arteries and Victim's heart. This took a considerable amount of force.

### Procedural History

The State charged Appellant by indictment with murder in the first degree and armed criminal action. The case proceeded to trial.

During direct examination of A.C., Victim's daughter, the State asked about Appellant's interest in hunting. A.C. testified that Appellant was a very experienced and successful hunter. The State then asked if Appellant talked to A.C. about hunting, and Appellant's trial counsel objected on relevance grounds. The State responded the testimony was relevant to Appellant's knowledge of knives. The trial court overruled the relevance objection. The State then went on to elicit testimony that Appellant used a knife during his hunts and that A.C. had seen Appellant use a knife to skin a deer and process the meat. Later in the State's case, the State elicited similar testimony from other witnesses that Appellant was an avid and experienced hunter, "he knew how to take down an animal," and he displayed his trophy kills at his house.

At the close of the State's evidence and at the close of all the evidence, Appellant filed motions for judgment of acquittal, arguing the State had failed to establish beyond a reasonable doubt that Appellant deliberated before killing Victim. The trial court denied both motions.

During the jury instruction conference, Appellant proffered two instructions. The first proffered instruction was an alternative instruction on murder in the second degree, allowing the

3

jury to convict Appellant of murder in the second degree in the absence of "the influence of sudden passion arising from adequate cause." The second proffered instruction was a voluntary manslaughter instruction. Appellant argued these instructions were warranted because Appellant had adequately injected the issue of "sudden passion" through evidence that Appellant had an altercation with Victim. In response, the State argued there was no evidence about what started the altercation, what the altercation was, or whether the altercation induced sudden passion in Appellant. The State also argued there was no evidence of "adequate cause." The trial court agreed and declined to give either of Appellant's proffered instructions.

The jury found Appellant guilty of murder in the first degree and armed criminal action. Appellant now appeals.

## Discussion

Appellant raises three points on appeal. In his first point, Appellant argues the trial court erred in overruling his motions for judgment of acquittal for murder in the first degree because the State failed to establish that Appellant deliberated when he stabbed Victim. In his second point, Appellant argues the trial court erred in refusing to instruct the jury on voluntary manslaughter because it is a lesser included offense of murder in the first degree and the jury could have found that Appellant stabbed victim while under the influence of sudden passion. In his third point, Appellant argues the trial court abused its discretion in overruling the objection to Victim's daughter's testimony about Appellant's experience with hunting because it was irrelevant and more prejudicial than probative.

<u>Point I</u>

4

In his first point, Appellant argues the trial court erred in overruling his motions for judgment of acquittal for murder in the first degree because the State failed to establish that Appellant deliberated when he stabbed Victim.

*Standard of Review*

"We review the denial of a motion for judgment of acquittal under the same standard of review used in reviewing a challenge to the sufficiency of the evidence to support a jury's guilty verdict." *State v. Shoemaker*, 675 S.W.3d 672, 677 (Mo. App. E.D. 2023) (quoting *State v. Sokolic*, 660 S.W.3d 54, 57 (Mo. App. E.D. 2023)). "The appellate court's role is limited to a determination of whether the state presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty." *Id.* at 677–78 (quoting *State v. Niederstadt*, 66 S.W.3d 12, 13–14 (Mo. banc 2002)). "The Court examines the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and inferences." *Id.* (quoting *Niederstadt*, 66 S.W.3d at 14).

*Analysis*

"A person commits the offense of murder in the first degree if he or she knowingly causes the death of another person after deliberation upon the matter." Section 565.020.1.[2] Deliberation requires "cool reflection for any length of time no matter how brief." Section 565.002(5). Deliberation may be inferred from the circumstances surrounding the crime. *State v. Sander*, 682 S.W.3d 85, 93 (Mo. App. W.D. 2023). "A mere instant is sufficient to qualify as deliberation." *State v. Scott*, 676 S.W.3d 336, 343 (Mo. App. E.D. 2023).

An inference of deliberation can be supported by a lack of concern for and a failure to attempt to aid the victim, an acrimonious relationship, and "a defendant's statements before the

---

[2] Unless otherwise indicated, all statutory references are to RSMo (2016) as amended.

5

crime occurred." *Id.* at 343–44. Deliberation also can be inferred from evidence of planning, the use of a deadly weapon on a vital part of the victim's body, and from disposing of evidence. *State v. Denham*, 686 S.W.3d 357, 373 (Mo. App. W.D. 2024); *State v. Shaddox*, 598 S.W.3d 691, 696 (Mo. App. S.D. 2020).

Appellant argues there was insufficient evidence that he deliberated before killing Victim. Appellant maintains the only evidence of his mental state consisted of his statements that there was an argument, he stabbed Victim, and he was going to kill himself. Appellant is incorrect.

Sufficient evidence at trial proved beyond a reasonable doubt that Appellant deliberated before killing Victim. Appellant and Victim were going through a contentious divorce. *See Scott*, 676 S.W.3d at 344. Appellant apparently lied to C.O. that he was going to Victim's house to let the dogs out, left his cell phone at C.O.'s house, and failed to return to C.O.'s house. *See Denham*, 686 S.W.3d at 373. After arriving at Victim's house, Appellant obtained a knife from the kitchen and stabbed Victim in the living room near the front door. *See id; Shaddox*, 598 S.W.3d at 696. Appellant stabbed Victim in the chest, penetrating her breastbone and heart, which, according to the medical examiner, took considerable force. *See Denham*, 686 S.W.3d at 373. Appellant did not render aid to Victim after stabbing her in the chest. Instead, Appellant attempted to hide the murder weapon in a kitchen drawer, called T.N. and told him he had stabbed and killed Victim, and suggested he was going to commit suicide. *See id.*; *Scott*, 676 S.W.3d at 344.

This evidence, and the reasonable inferences drawn therefrom, are sufficient for the jury to find beyond a reasonable doubt that Appellant deliberated before killing Victim.

Point I is denied.

6

<u>Point II</u>

In his second point, Appellant argues the trial court erred in refusing to instruct the jury on voluntary manslaughter because it is a lesser included offense of murder in the first degree and the jury could have found that Appellant stabbed victim while under the influence of sudden passion.

*Standard of Review*

This Court's review of "a court's refusal to give a proffered instruction pursuant to Section 556.046 is *de novo*, meaning this Court evaluates whether the instruction was supported by the evidence and the law." *State v. Welch*, 600 S.W.3d 796, 806 (Mo. App. E.D. 2020).

*Analysis*

"Missouri law requires instruction on a lesser included offense when (1) a party timely requests the instruction; (2) there is a basis in the evidence for acquitting the defendant of the charged offense; and (3) there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested." *Id.* at 806–07 (quoting *State v. Smith*, 522 S.W.3d 221, 225 (Mo. banc 2017)) (internal quotation marks omitted).

"Voluntary manslaughter is defined as causing the death of another person under circumstances that would constitute murder in the second degree, except that the death was caused 'under the influence of sudden passion arising from adequate cause.'" *State v. Redmond*, 686 S.W.3d 333, 342 (Mo. App. E.D. 2024) (quoting *State v. Redmond*, 937 S.W.2d 205, 208 (Mo. banc 1996)). "The defendant has the burden of injecting the issue of influence of sudden passion arising from adequate cause." *Redmond*, 686 S.W.3d at 342.

"Sudden passion is defined as passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and

is not solely the result of former provocation." *Id.* at 343 (quoting *Redmond*, 937 S.W.2d at 208) (internal quotation marks omitted). "Adequate cause is cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." *Id.*

Appellant argues he sufficiently injected the issue of sudden passion because the evidence established an altercation between Appellant and Victim before he stabbed Victim. Appellant's argument fails.

For sudden passion, there must be direct provocation by the victim. *Id.* Regardless of Appellant's claim of an altercation with Victim, there is no evidence of provocation. Rather, even according to Appellant's account, he did not know what happened and he did not describe the altercation. "Sudden passion cannot arise unless a defendant shows the victim took some action to inflame the defendant and that the defendant was not the initial aggressor." *State v. Stidman*, 259 S.W.3d 96, 102 (Mo. App. S.D. 2008) (quoting *Hill v. State*, 160 S.W.3d 855, 859 n.5 (Mo. App. S.D. 2005)). The record is devoid of any evidence that Victim somehow inflamed Appellant or that Appellant was not the initial aggressor.

Similarly, even if Appellant could direct us to any evidence of sudden passion on his part, there is no evidence of sudden passion arising from adequate cause. Nothing in the record suggests any cause, much less "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." *Redmond*, 686 S.W.3d at 343.

In sum, Appellant did not meet his burden to inject the issue of sudden passion arising from adequate cause. *See id.* at 342. Thus, there was no basis in the evidence for convicting Appellant of the lesser included offense for which the instruction was requested. *See Welch*, 600

8

S.W.3d at 806. The trial court did not err in refusing to submit Appellant's requested voluntary manslaughter instruction to the jury.

Point II is denied.

## Point III

In his third point, Appellant argues the trial court abused its discretion in overruling a relevance objection to testimony about Appellant's hunting experience. Appellant alleges the testimony would give rise to frightening and gruesome mental images in the minds of the jurors.

*Standard of Review*

"A trial court has broad discretion to admit or exclude evidence at trial." *State v. Greer*, 679 S.W.3d 531, 534 (Mo. App. E.D. 2023) (quoting *State v. Madrigal*, 652 S.W.3d 758, 771–72 (Mo. App. E.D. 2022)). "We therefore review preserved claims of error in evidentiary rulings for whether the trial court abused its discretion." *Id.* "This standard gives the trial court broad leeway in choosing to admit evidence; therefore, an exercise of this discretion will not be disturbed unless it is clearly against the logic of the circumstances." *Id.* (quoting *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011)). "Where a criminal defendant alleges the evidence was improperly admitted, the test for prejudice is whether the error was outcome-determinative." *Madrigal*, 652 S.W.3d at 772 (quoting *State v. Thomas*, 628 S.W.3d 686, 691 (Mo. App. E.D. 2021)). Outcome determinative error "occurs when erroneously admitted evidence so influenced the jury that. . . there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." *State v. Forster*, 616 S.W.3d 436, 448 (Mo. App. E.D. 2020) (quoting *State v. Hughes*, 469 S.W.3d 894, 903 (Mo. App. E.D. 2015)) (internal quotation marks omitted).

*Analysis*

9

For evidence to be admissible, it must be both logically and legally relevant. *State v. O'Keefe*, 681 S.W.3d 615, 633 (Mo. App. E.D. 2023). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (quoting *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015)). "Evidence is legally relevant when the probative value of the evidence outweighs unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* (internal quotation marks omitted).

Appellant argues A.C.'s testimony about Appellant's experience hunting with a knife was unduly prejudicial, and therefore legally irrelevant, because it was graphic, disturbing, and would have brought frightening and gruesome images to the minds of the jurors as they contemplated the murder.

Appellant fails to demonstrate undue prejudice or outcome determinative error. During the trial, various witnesses testified to Appellant's prowess and experience as a hunter without objection from Appellant's trial counsel. The testimony now challenged by Appellant is cumulative of other evidence. "A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence." *Forster*, 616 S.W.3d at 448 (quoting *State v. Brandolese*, 601 S.W.3d 519, 535–36 (Mo. banc 2020)). The trial court did not abuse its discretion in overruling Appellant's relevance objection.

Point III is denied.

## Conclusion

We affirm the judgment of the trial court.

Cristian M. Stevens, J.

10

James M. Dowd, P.J., and
Angela T. Quigless, J., concur.