**STATE of Missouri,**
**Plaintiff-Respondent,**

**v.**

**John L. NUNN, Defendant-Appellant.**

**No. 48675.**

Missouri Court of Appeals,
Eastern District,
Division Four.

July 9, 1985.

Motion for Rehearing and/or Transfer
Denied Aug. 28, 1985.

Application to Transfer Denied
Oct. 16, 1985.

John M. Morris, Asst. Atty. Gen., Jefferson City, for defendant-appellant.

Henry Robertson, St. Louis, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction by a jury of first degree assault and twenty-five year sentence imposed by the court. We affirm.

The victim, Reggie Harris, and his brother, James, were leaving Reggie's home in St. Louis to visit their mother in the hospital. Both Reggie and James are police officers. They were both dressed in civilian clothing and were in James' private vehicle. As they pulled out into the street their movement was blocked by a car double-parked on the one-way street. The occupants of that car were engaged in a conversation with a pedestrian, Ruby Love. After waiting for a minute James honked his horn once. He then waited a minute or more, and honked again. This continued for four or five more honks. The passenger in the car turned to look at the Harris' during this five to seven minute period. Ms. Love asked the driver to pull the car to the curb to which the driver replied "the niggers can wait, they're in no hurry."[1] He then pulled a gun out of a bag and said, "See what I mean, baby, by he can wait, them peoples can wait." He pointed the gun out the window of the car toward the Harris car, stepped out of the car, pointed the gun at the windshield of the Harris car, said something that the Harris' could not hear and got back into the car. Ms. Love turned and left when the gun was pointed out the window.

The Harris' took out their guns and badges and exited their car to arrest the driver for flourishing a deadly weapon. Both identified defendant as the driver. Each Harris testified that they announced they were police officers as they approached the car and displayed their

---

1. The Harris', the passenger and the driver of the blocking car were black.

badges. Ms. Love did not hear any statement about police. Reggie reached the passenger window and leaned forward with his gun displayed. The driver picked up the gun which was lying on the seat and shot Reggie in the shoulder. The bullet traveled to Reggie's chest behind his heart where it is still lodged. James did not see who fired the first shot but from what he heard knew it was fired from inside the car and not by Reggie. Several more shots were fired by Reggie, James and someone in the car and the car then sped off.

Reggie was taken to a hospital in Normandy. While there James saw the passenger who came in for treatment of a gunshot wound to the hand. Shortly thereafter the automobile involved was found in Kinloch. Fingerprints were lifted from it. Those found on the driver's side were defendant's, those on the passenger's side were David Hughes, identified by the Harris' as the passenger. The automobile was registered to Hughes. Ms. Love could not identify either person in the car.

On appeal defendant raised two claims of error. The first concerns the trial court's refusal to admit into evidence a statement in Hughes' hospital record from City Hospital to which he was transferred from Normandy. That entry, made by the treating physician, was:

> "Apparently the pt. was involved in an altercation earlier this evening for 'double parking.' He shot a police officer and he in turn was shot in the ® hand."

Hughes was called to testify and invoked his Fifth Amendment right not to testify. The treating doctor was no longer at City Hospital and had left the area.

■ As a general rule in Missouri, declarations against penal interest by a third party are not admissible as an exception to the hearsay rule in criminal proceedings. *State v. Turner*, 623 S.W.2d 4 (Mo. banc 1981) [6, 7]; *State v. Jones*, 671 S.W.2d 296 (Mo.App.1984) [1]. In *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), it was held to be a denial of due process to exclude declarations against penal interest where the declarations were made "under circumstances that provided considerable assurance of their reliability." The Missouri Supreme Court has held that *Chambers* is not to be extended "beyond the facts presented there." *State v. Turner, supra*. We do not find the indicia of reliability which forms the predicate for application of *Chambers* in this case. The statement in the medical report is not a direct quote; it does not identify the source of the doctor's information; it is a single isolated statement; it concerns information which was not necessary for treatment of Hughes; as to who did the shooting, it is totally uncorroborated; and neither the declarant nor the writer of the report is available for cross-examination. We find no error in the court's action in refusing to allow the evidence.

■ Defendant next complains of the trial court's failure to instruct on self-defense. Where the evidence raises an issue of self-defense, the issue must be submitted to the jury. *State v. Adkins*, 537 S.W.2d 246 (Mo.App.1976) [5]. Whether the evidence raises the issue of self-defense is a question of law. *State v. Willett*, 539 S.W.2d 774 (Mo.App.1976) [11]. One of the elements of self-defense is the absence of aggravation or provocation by the defendant. Here it is clear that defendant was the initial aggressor in the altercation. His action in pointing a gun at the windshield of the Harris car made him the aggressor.

The withdrawal doctrine provides an exception to the non-aggression element. The rule is stated in *State v. Pride*, 567 S.W.2d 426 (Mo.App.1978) [3, 4] as follows:

> "Under the so-called withdrawal doctrine, however, which is as applicable to assault as to homicide, one who was the aggressor or who provoked the difficulty in which he killed (or injured or assaulted) another cannot invoke the right of self-defense to excuse or justify the homicide (or injury or assault), unless he had previously withdrawn from the combat in such a manner as to have shown his intention in good faith to desist." See also § 563.031 RSMo 1978.

■ A factual question existed from the evidence as to whether the Harris' identi-

fied themselves or whether such identification was heard or seen by the defendant. If he was unaware they were police officers, the question of defendant's right to self-defense depends on whether the evidence shows a withdrawal. It does not. There is a difference between withdrawal and retreat. A "withdrawal" is an abandonment of the struggle and such abandonment must be perceived or made known to the adversary. *State v. Spencer,* 307 S.W.2d 440 (Mo.1957) [2, 3]; *State v. Dunlap,* 639 S.W.2d 201 (Mo.App.1982) [2, 3]; *State v. Pride, supra.* Defendant in no way indicated an intention to withdraw. He simply retreated back into his automobile, continued to block the street, and placed the gun on the seat next to him. He did not communicate by word or deed an intention to withdraw. There was no error in refusing a self-defense instruction.

Judgment affirmed.

SNYDER and SATZ, JJ., concur.