**STATE of Missouri, Respondent,**

v.

**Steven HUFFMAN, Appellant.**

**No. 50283.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 6, 1986.
Motion for Rehearing and/or Transfer
Denied June 4, 1986.

Bradford Kessler, St. Louis, for appellant.

William L. Webster, Kevin B. Behrndt, Jefferson City, for respondent.

SNYDER, Judge.

Defendant appeals from the judgment and sentences imposed after a jury found him guilty on two charges of assault second degree in violation of Sec. 565.060

RSMo.Supp.1984 and on one charge of armed criminal action, in violation of Sec. 571.-015 RSMo.1978. Punishment was assessed at one year for each assault conviction and three years for the armed criminal action, the sentences to run consecutively for a total of five years. The jury acquitted defendant on two other counts of assault first degree. The judgment is reversed and cause remanded.

The sole issue appellant raises is the propriety of the trial court's refusal to give self-defense instructions on two assault counts.

 When evidence raises an issue of self-defense, the issue must be submitted to the jury. *State v. Nunn,* 697 S.W.2d 244, 246[3] (Mo.App.1985). Whether the evidence raises the issue of self-defense is a question of law. *Id.* [4]. Most important, the evidence must be reviewed in the light most favorable to defendant's self-defense hypothesis. *State v. Ehlers,* 685 S.W.2d 942, 948[6] (Mo.App.1985).

The fight leading to appellant's eventual convictions for assault and armed criminal action began around 11:00 p.m. on October 26, 1984. Appellant, then 16 years old, and a friend went to a house at the corner of Minnesota and Nagel in South St. Louis. Appellant wanted to "buy a couple of joints" (marijuana cigarettes) from Ronald Slinger, the owner of the house. Instructing his friend to wait outside, appellant walked up to the porch where several persons were playing cards, drinking beer and smoking marijuana. The persons at the card table included Ronald Slinger, Todd White, Robert Gardner, and Gary Baechlor.

Appellant approached Ronald Slinger and asked if he could buy "a couple of joints." Ronald replied, "Wait a minute." After waiting, appellant again asked Ronald for the cigarettes, but Ronald said nothing. Appellant tapped him on the shoulder and asked him a third time. Ronald put his cards down and loudly repeated, "Wait a minute."

Todd White then asked appellant to leave. Appellant answered he would leave after he bought the "joints". White got up, grabbed appellant by his shirt and told him to leave. When appellant pushed White's hand away, White hit him. Appellant and White began fighting, knocking the card table over. The others seated at the table rose.

At some point during the fight, Gary Baechlor had moved, blocking the porch stairs. Robert Gardner then entered the melee, hitting appellant. Appellant turned from White to fight Gardner. As appellant and Gardner exchanged blows, White stabbed defendant in the neck. Gardner, suffering from knife wounds inflicted by appellant and bleeding profusely, quit fighting and went into the house.

Weak from the stab wound by White, appellant leaned against the porch wall. White began gesturing at him with a knife. When appellant tried to tackle White, White flipped him off the porch onto the grass.

While lying on the grass, appellant noticed that Baechlor, White, and both Ronald and Kenneth Slinger were all on the porch. They came running down the porch stairs toward appellant who pulled out his knife, got up and started swinging with his knife at them, hitting someone twice. Appellant could not identify whom he had cut, but Kenneth Slinger was stabbed twice in the stomach.

Appellant ran out of the yard, and when he was two steps out on the sidewalk, Baechlor grabbed appellant and began to punch him. Appellant fell down with Baechlor on top of him; Baechlor continued to hit appellant who then cut Baechlor's face. Despite the cut, Baechlor continued to hit defendant until defendant stabbed Baechlor twice in the back.

Appellant saw another man, Jesse Stinson, running toward him. Stinson, 29 years old and 235 pounds on a six foot frame, came up and began "stomping" on appellant's hand which held the knife. Stinson then just tried pressing on appellant's knife hand, but appellant slid his hand out from Stinson's foot, rolled Baechlor off him, jumped up and tried to stab

Stinson in the stomach. Because Stinson had moved, appellant's knife caught him on his side, not in his stomach.

Appellant explained that he had tried to stab Stinson because he thought Stinson had come from the party and was "one of them", that he had come out of the house. After stabbing Stinson, appellant saw Ronald Slinger running toward him with a baseball bat. Appellant then fled, joining his friend waiting out front. The friend took appellant home after which appellant went to the hospital where he received eight stitches for the cut to the side of his jaw.

The state's evidence presented a different picture but not in any respect material to the issue of the refused self-defense instructions.

The trial court refused appellant's self-defense instructions offered on Count I, second degree assault of Kenneth Slinger; Count III, second degree assault of Robert Gardner; and Count IV, second degree assault of Jesse Stinson. The self-defense instructions requested were given on Count II, second degree assault of Gary Baechlor. Appellant was found guilty of assault only of Kenneth Slinger on Count I and Jesse Stinson on Count IV. Appellant contends the trial court erred in refusing the self-defense instructions on these counts.

■ The right of self-defense is a person's privilege to defend himself against personal attack. *State v. Chambers*, 671 S.W.2d 781, 783[1] (Mo. banc 1984). Deadly force may be used in self-defense only when there is (1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger, serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life. *Id.* [2].

The trial court refused to instruct on self-defense on Count I for the second degree assault of Kenneth Slinger. Appellant testified that he did not recall stabbing Kenneth Slinger. He did say, however, that after he had been thrown off the porch into the yard, he hit somebody with his knife twice when he was swinging his knife wildly to fend off the group of men who had run down the porch stairs toward him. Slinger had been stabbed twice in the stomach at some time during the fight.

In determining whether there was sufficient evidence to require the giving of the self-defense instruction, this court must view the evidence in the light most favorable to appellant. *State v. Chambers*, 671 S.W.2d at 783[3].

■ Viewed by this standard, it was error not to instruct on self-defense on the Kenneth Slinger assault count. Appellant was engaged in a violent, confused fight with several men who, according to his testimony, were attacking him. That appellant had received a bleeding cut on his jaw lent credence to the reasonableness of his belief that he was in danger. Although the state presented conflicting evidence about the time and place of Kenneth Slinger's stabbing, appellant testified the stabbing occurred when he was defending himself against at least four men.

According to appellant's evidence White was the aggressor and four men, including Kenneth Slinger, attacked him after White struck the first blow. There was an apparently real necessity for appellant to use deadly force to protect himself and a reasonable cause for appellant's belief in the necessity. Appellant's evidence was that he had no opportunity to avoid the danger and his need to use deadly force. A jury could have found he had reasonable cause to believe there was a necessity to defend himself with deadly force. The instruction should have been given. The judgment on Count I is reversed.

The court also refused to give appellant's requested self-defense instruction on Count IV pertaining to the assault of Jesse Stinson. This was also error, although it is a closer question.

Stinson intervened by "stomping" on appellant's hand while appellant and Baechlor were fighting on the ground. Appellant thought Stinson had come from the house and was one of the group who had set upon him, without cause. The entire wild fracas lasted only a matter of minutes and appellant, considering Stinson's action, particularly in light of Stinson's size, could have had a reasonable belief that there was a necessity for defending himself from serious bodily injury. The jury could have found from appellant's evidence all of the elements necessary to a finding that appellant had the right of self-defense. The judgment on Count IV must also be reversed.

The state responds that appellant provoked the attack and the state's witnesses so testified. Appellant, however, testified that White was the initial aggressor. The jury should have been allowed to consider appellant's claim of self-defense based on the evidence adduced.

The issue of self-defense should have been submitted to the jury on the two charges of second degree assault of Kenneth Slinger and of Jesse Stinson. The failure to do so constitutes reversible error. Because the convictions for the two assaults underlie the armed criminal action conviction, the reversal of the two assault charges requires the reversal of the armed criminal action as well.

The judgment is reversed and the cause remanded.

CARL R. GAERTNER, P.J., and SMITH, J., concur.