STATE of Missouri,
Plaintiff/Respondent,

v.

Leroy CRAIG, Defendant/Appellant.

No. ED 77054.

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 31, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 2000.

Application for Transfer Denied
Jan. 23, 2001.

Daniel L. Mohs, The Stokely Group, L.L.P., St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Assistant Attorneys General, Jefferson City, MO, for respondent.

CRANE, Judge.

Defendant, Leroy Craig, appeals from a judgment entered after a jury verdict finding him guilty of murder in the second degree, in violation of Section 565.021 RSMo (1994); armed criminal action, in violation of Section 571.015 RSMo (1994); and assault in the second degree, in violation of Section 565.060 RSMo (1994), arising out of the murder of one person and assault of another person. On appeal defendant asserts that the state failed to make a submissible case for second degree murder. He further claims that the trial court erred in refusing to instruct the jury on voluntary and involuntary manslaughter and made erroneous rulings during closing argument. As a result of the trial court's failure to instruct on voluntary and involuntary manslaughter, we reverse and remand for a new trial.

Because the first point challenges the sufficiency of the evidence of second degree murder, we recite the facts in the light most favorable to the verdict on that count. Defendant lived with his girlfriend, Marion Thompson, in her apartment. In the early morning hours of July 5, 1998, defendant and Thompson had an argument and Thompson asked her friend, Debra Melvin, the assault victim, to pick her up.

Melvin drove to Thompson's apartment with her friend, Eddie Potts, the murder victim, and her two year-old daughter. After they arrived, Potts waited in the car, and Melvin went to the door to get Thompson. Melvin looked through the door and saw Thompson and defendant arguing. Thompson told Melvin to wait because she was coming with Melvin. Melvin returned to her car with her daughter, while Potts got out of the car and stood near it.

Defendant ran out of the apartment carrying a three-foot long iron bar. Potts and Melvin ran from the car. Defendant and Potts never exchanged words. Defendant ran toward Potts and struck him across the back. Potts fell to his knees but was able to get up and run around his car as defendant chased him. While chasing Potts, defendant struck Potts's car with the iron bar several times and shattered the rear window and a taillight. As Potts attempted to enter his car, he pulled out a three or four inch pocketknife. Defendant struck Potts on his left side, under his arm and across the chest.

Meanwhile, Thompson left her apartment and yelled at defendant to stop. Defendant subsequently chased Thompson and beat her ten to fifteen times with the iron bar. He then threw the iron bar at Melvin, who was carrying her two year-old daughter. The bar came within three inches of the child's head.

Potts was hospitalized and died on July 18, 1998. The medical examiner who conducted the autopsy testified that the cause of Potts's death was blunt trauma which caused multisystem organ failure.

In his first point defendant argues that the trial court erred in denying his two motions for acquittal of second degree murder because there was insufficient evidence from which a reasonable juror could have found him guilty of knowingly and intentionally causing Potts's death because defendant could not have been aware that

striking Potts with an iron bar would be practically certain to cause Potts's death because Potts had pre-existing medical conditions.

A person commits the crime of murder in the second degree if he knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person. Section 565.021.1(1) RSMo (1994).

A person **"acts knowingly,"** or with knowledge,

(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

Section 562.016.3 RSMo (1994).

■ A killing by the use of a deadly weapon on a vital part of the victim's body is sufficient to permit a finding of intent to kill. *State v. Deckard*, 18 S.W.3d 495, 503 (Mo.App.2000). In this case, defendant concedes that the iron bar with which he struck Potts was a deadly weapon, but argues that the blows to Potts's chest and back were not to a vital part of the body and thus he could not have intended Potts's death. We disagree. The chest, which contains the majority of a person's vital organs, is a vital area. *See State v. Mallett*, 732 S.W.2d 527, 533 (Mo. banc 1987); *see also State v. Light*, 835 S.W.2d 933, 936 (Mo.App.1992). Evidence that defendant struck a vital part of Potts's body with a deadly weapon is sufficient to show intent. The fact that Potts had other conditions that contributed to the cause of death is irrelevant in light of the evidence establishing this intent. Point one is denied.

In his second point defendant asserts that the trial court erred in refusing to submit his requested jury instructions on voluntary and involuntary manslaughter because there was a basis for a reasonable jury to find defendant guilty of those lesser included offenses and to acquit him of second degree murder.

"A person commits the crime of voluntary manslaughter if he: (1) causes the death of another person under circumstances that would constitute murder in the second degree ..., except that he caused the death under the influence of sudden passion arising from adequate cause." Section 565.023.1(1) RSMo (1994). "Sudden passion" means "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." Section 565.002(7) RSMo (1994). "Adequate cause" means "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair his capacity for self-control." Section 565.002(1) RSMo (1994).

■ The concept of sudden passion arising out of provocation is an objective standard, which is measured by an ordinary person's capacity for self-control. *State v. Fears*, 803 S.W.2d 605, 609 (Mo. banc 1991). Passion may be rage or anger, or terror, but it must be so extreme that, for the moment, the action is being directed by passion, not reason. *Id.* Sudden passion is not established when a reasonable person had time for the passion to cool. *Id.* To be "adequate" under the voluntary manslaughter standard, the provocation must be of a nature calculated to inflame the passions of the ordinary, reasonable, temperate person and must result from a sudden, unexpected encounter or provocation tending to excite the passion beyond control. *Id.* Words alone, no matter how opprobrious or insulting, are not sufficient to show adequate provocation. *Id.* The defendant has the burden of injecting the issue of influence of sudden passion arising from adequate cause. Section 565.023.2 RSMo (1994).

**[9, 10]** A trial court is obligated to instruct on a lesser included offense if there is a basis for the jury 1) to acquit defendant of the offense charged, and 2) to convict defendant of the lesser included offense. Section 556.046.2 RSMo (1994); *State v. Hibler*, 5 S.W.3d 147, 148 (Mo. banc 1999). If in doubt, the trial court should instruct on the lesser included offense. *Hibler*, 5 S.W.3d at 148. In determining whether a basis existed to support a lesser included offense instruction, we view the evidence in the light most favorable to defendant. *State v. Edwards*, 980 S.W.2d 75, 76 (Mo.App.1998).

 Defendant testified that he told Potts and Melvin to leave the area in front of his residence. Potts, who weighed about 230 or 240 pounds, was angry and intoxicated and began to approach defendant and curse at him. Defendant cursed back and repeatedly asked Potts to leave. Potts pulled out and brandished a twelve inch knife and charged defendant. Defendant felt threatened and scared and could not think. He grabbed the iron bar from the yard, and when Potts got closer, defendant swung the iron bar at Potts's hand in an attempt to knock the knife away. He missed and struck Potts across the chest. Potts then tried to stab defendant, who in fear hit Potts on the side.

The evidence in this case is similar to that in *State v. Redmond*, 937 S.W.2d 205 (Mo. banc 1996), and the cases cited therein. In *Redmond* the parties were engaged in a heated argument, the victim confronted defendant in a threatening manner, and the victim frightened the defendant by displaying a deadly weapon. *Id.* at 209.

As in *Redmond*, the threatening confrontation described by defendant, along with the display of a twelve inch knife, is the type of provocation that could cause a reasonable person to lose self-control. This evidence is sufficient to inject the issue of sudden passion arising from ade-

quate cause. *Id.* The trial court erred in failing to submit a voluntary manslaughter instruction. *Id.*

 A person commits the crime of involuntary manslaughter if he "recklessly causes the death of another person." Section 565.024.1(1) RSMo (1994). A person acts "recklessly" if he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.4 RSMo (1994). "Recklessness resembles knowing conduct in one respect in that it involves awareness, but it is an awareness of risk, that is, of a probability less than a substantial certainty." *State v. Beeler*, 12 S.W.3d 294, 299 (Mo. banc 2000). "[R]eckless conduct is not inconsistent with the intentional act of defending one's self, if in doing so one uses unreasonable force." *Id.*

 The trial court was obliged to instruct on involuntary manslaughter if there was a basis for the jury to acquit defendant of second degree murder and to convict him of involuntary manslaughter. *See* Section 556.046.2 RSMo (1994). In this case there was a basis for a reasonable jury to have found that defendant was reckless because he responded to the threat of a knife by inflicting ill-aimed blows with an iron bar. Accordingly the trial court erred in failing to submit an involuntary manslaughter instruction.

 In his third point defendant makes two separate claims of error.[1] First, defendant asserts that the trial court erred during closing argument when it refused to grant a mistrial after the state described the assault charge and the potential of the iron bar to have injured Melvin or her child. Defendant argues that the mention of the child was an imper-

---

**1.** Separate claims of error should be stated in separate points. *Shoemaker v. Ekunno*, 960

S.W.2d 527, 531 (Mo.App.1998).

missible reference to an uncharged crime. This claim is frivolous. Count III charged defendant with the assault on Melvin and her child and evidence of this assault was in the record.

Second, defendant argues the court erred in overruling an objection to the state's comment on Thompson's failure to testify. We do not reach this question because its resolution depends on an analysis of facts and relationships as they existed at the time of this trial, which will likely be different when this case is retried.

Reversed and remanded.

MARY K. HOFF, C.J. and CHARLES B. BLACKMAR, Sr.J., concur.