STATE of Missouri, Respondent,

v.

Brian K. MORROW, Appellant.

No. WD 58149.

Missouri Court of Appeals,
Western District.

April 10, 2001.

Jeannie M. Willibey, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J., EDWIN H. SMITH, J. and NEWTON, J.

ULRICH, Presiding Judge.

Brian Morrow appeals his convictions for second degree murder, section 565.021, RSMo 2000, and armed criminal action, section 571.015, RSMo 2000, and concurrent sentences of fifteen years imprisonment and five years imprisonment, respectively. In his sole point on appeal, he claims that the trial court plainly erred in submitting instruction No. 11, the self-defense instruction, because the instruction did not include a paragraph pertaining to withdrawal from the encounter by an initial aggressor. The judgment of conviction is affirmed.

On the evening of August 16, 1998, Wayne Morrow and Janice Miller barbecued at Case Park in Kansas City. Several members from each of their families attended. At approximately 2:15 a.m., an argument erupted at the barbecue grill between Brian Morrow, the appellant, and Miklos "Dodie" Taylor. Ronnie Morrow, the appellant's brother, knocked Dodie to the ground, and Ronnie and Mr. Morrow were on top of him hitting him with their fists. After the fight broke up, Ronnie and Dodie continued to argue and another fight began between the two men. Mr. Morrow then grabbed a knife from the picnic table and ran up behind Dodie and stabbed him in the back. Trina Miller and Mikell Taylor ran over to the fight to help Dodie, and Mr. Morrow swung the knife at them stabbing Trina in her arm and Mikell twice in her left leg and once in her right leg. The fight broke up quickly, and several people including Mr. Morrow ran to their cars and left the park. Dodie ultimately died from a single stab wound in his back.

Mr. Morrow was subsequently charged as a prior offender with one count of second degree murder, two counts of first degree assault, and three counts of armed criminal action. He testified in his own behalf at trial. He explained that he was cooking meat at the barbecue grill when Dodie started yelling and cursing at him that he was burning the food. Ronnie, Mr. Morrow's brother, first tried to calm Dodie down and then grabbed Dodie. Both men fell to the ground knocking the grill over. Mr. Morrow was trying to calm the two

men when someone from behind him knocked him over onto the men on the ground. Mr. Morrow further explained that after he got up off the ground, he decided he would apologize to Dodie in case he had somehow offended him. He approached Dodie, who was still on the ground being restrained by others, and told him to calm down. Dodie cursed at Mr. Morrow again and told him that he was going to kill him. Mr. Morrow testified that he was shocked and confused and didn't understand what he had done to upset Dodie. Consequently, he decided to leave and walked a few yards away to find his kids.

In the meantime, Dodie and Ronnie continued to argue. Mr. Morrow testified that he was worried about his brother so he started to walk towards the men and called for Ronnie. At that point, Dodie turned towards Mr. Morrow and charged him knocking him to the ground. Dodie then started choking Mr. Morrow and soon many people were on the ground with Mr. Morrow on the bottom of the pile. He testified that he could not breathe under the pile and was being kicked and hit with bottles. Mr. Morrow explained that he felt his life was in danger and, as a result, he swung a knife that he had been using while cooking two or three times. He then heard someone say, "Oh, I got cut," and he felt the weight getting off of him. As he was getting up and trying to focus and catch his breath, he saw other people charging at him swinging their fists, and he again swung the knife. He left the park soon after and did not learn that Dodie had died until the next day. He testified that he was informed by police in late September that Mikell and Trina had also been stabbed.

The trial court submitted a self-defense instruction to the jury. Included in the instruction was the initial aggressor paragraph patterned after MAI–CR3d 306.06:

A person can lawfully use force to protect himself against an unlawful attack. However, an initial aggressor, that is, one who attacks another, is not justified in using force to protect himself from the counter-attack which he provoked.

Mr. Morrow was convicted of second degree murder and armed criminal action and was acquitted of the remaining counts. The trial court sentenced him to fifteen years imprisonment and five years imprisonment, respectively. This appeal followed.

In his sole point on appeal, Mr. Morrow claims that the trial court plainly erred in submitting instruction No. 11, the self defense instruction, because the instruction did not include a paragraph pertaining to withdrawal from the encounter by an initial aggressor. Mr. Morrow argues that the following paragraph patterned after MAI–CR3d 306.06 should also have been included in the instruction after the initial aggressor paragraph:

A person who is the initial aggressor in an encounter can regain the privilege of using force in lawful self-defense if he withdraws from the original encounter and clearly indicates to the other person his desire to end the encounter. Then, if the other person persists in continuing the incident by threatening to use or by using force, the first person is no longer the initial aggressor, and he can then lawfully use force to protect himself.

■ Because Mr. Morrow did not object at trial to submission of the instruction, he requests plain error review pursuant to Rule 30.20. For instructional error to rise to the level of plain error, the trial court must have so misdirected or failed to instruct the jury such that the error affected the jury's verdict, resulting in manifest

injustice or miscarriage of justice. *State v. Ludwig*, 18 S.W.3d 139, 142 (Mo.App. E.D. 2000).

 Section 563.031 authorizes a person to use physical force upon another person when and to the extent he believes such force to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person. § 563.031.1, RSMo 2000. A defendant has the burden of injecting the issue of self-defense into the case by substantial evidence.[1] § 563.031.4, RSMo 2000; *State v. Powers*, 913 S.W.2d 138, 141 (Mo.App. W.D.1996). If substantial evidence putting self-defense in issue is presented, the trial court must instruct on self-defense. *Powers*, 913 S.W.2d at 141. In determining whether a self-defense instruction should have been submitted to the jury, the evidence is viewed in the light most favorable to defendant's theory of self-defense. *Id.* Manifest injustice results when a defendant meets his burden of injecting the issue of self-defense into the case but the trial court does not submit an instruction on the issue to the jury regardless of whether the defendant requests the instruction. *See State v. Albanese*, 920 S.W.2d 917, 922 (Mo.App. W.D.1996), *overruled on other grounds by State v. Beeler*, 12 S.W.3d 294 (Mo. banc 2000); *State v. Williams*, 815 S.W.2d 43, 47 (Mo.App. W.D.1991).

 Self-defense is not available to a defendant if he was the initial aggressor unless he withdrew from the conflict in such manner to have shown his intention to desist. § 563.031.1(1)(a), RSMo 2000;

*State v. Muhammad*, 757 S.W.2d 641, 643 (Mo.App. E.D.1988); *Williams*, 815 S.W.2d at 48. A withdrawal is the abandonment of the struggle by one of the parties. *State v. Nunn*, 697 S.W.2d 244, 247 (Mo.App. E.D.1985); *Williams*, 815 S.W.2d at 48. The withdrawal must be made in good faith and be more than mere retreat, which may be simply a continuance of hostilities. *Nunn*, 697 S.W.2d at 247; *Williams*, 815 S.W.2d at 48. Additionally, the withdrawal or abandonment must be perceived by or made known to the adversary. *Muhammad*, 757 S.W.2d at 643; *Nunn*, 697 S.W.2d at 247; *Williams*, 815 S.W.2d at 48. Thus, to be entitled to a self-defense instruction, substantial evidence must demonstrate that the defendant was either not the initial aggressor or, if he was the initial aggressor, that he effectively withdrew from the conflict. MAI–CR3d 306.06 Notes on Use 3(a); *Williams*, 815 S.W.2d at 48.

 In his appeal, Mr. Morrow does not contest the inclusion of the initial aggressor language in the instruction. Rather, he challenges the trial court's refusal to also include the withdrawal paragraph. Mr. Morrow contends that his own testimony alone constituted evidence that he had withdrawn from the encounter. Mr. Morrow's testimony, however, was not sufficient to inject the issue of withdrawal from the encounter by an initial aggressor. Mr. Morrow's testimony only constituted evidence that he was not the initial aggressor, not that he was the initial aggressor and that he effectively withdrew from the encounter. According to his testimony, the victim, Dodie, began the argument at

---

1. The quantum of proof for self-defense has been variously defined as "substantial evidence," "evidence putting it in issue," "any theory of innocence ... however improbable that theory may seem, so long as the most favorable construction of the evidence supports it," "supported by evidence," "any theory of the case which his evidence tended to establish," "established defense," and "evidence to support the theory." *State v. Weems*, 840 S.W.2d 222, 226 (Mo. banc 1992) (citations omitted).

the grill, and his brother, Ronnie, started the physical fight. He explained that he only ended up on the ground in the middle of the fight when someone pushed him down from behind. That fight concluded, and he walked away. The next fight then began when Dodie charged him, knocked him to the ground, and began choking him. Mr. Morrow never admitted that he was the initial aggressor in the ultimate episode or any other altercation. His testimony did not constitute evidence that he had withdrawn from an encounter in which he was the initial aggressor. The trial court, therefore, did not plainly err in submitting instruction No. 11, the self-defense instruction, which did not include the withdrawal paragraph.

The judgment of conviction is affirmed.

EDWIN H. SMITH and NEWTON, JJ., concur.