**STATE of Missouri, Plaintiff–Respondent,**

v.

**Francis Muriel GASKINS, Defendant–Appellant.**

No. 23375.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 3, 2001.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 26, 2001.

Application for Transfer Denied Feb. 26, 2002.

Amy M. Bartholow, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Francis Muriel Gaskins (defendant) was charged with murder in the second degree, § 565.021.1,[1] (Count I), armed criminal action, § 571.015.1, (Count II), and unlawful use of a weapon, § 571.030.1, RSMo Cum.Supp.1998, (Count III). He received a jury trial. The jury was instructed on lesser-included offenses in Count I of voluntary manslaughter, § 565.023, and involuntary manslaughter, § 565.024. Defendant was convicted on Count I of involuntary manslaughter and on Counts II and III of armed criminal action and unlawful use of a weapon. The judgment of conviction is affirmed as to Count III. It is reversed and remanded for new trial as to Counts I and II.

Terry Busby was married to Marlene Busby, defendant's stepdaughter. They were separated. Terry was having an affair with Audra Gaskins, defendant's daughter-in-law. On the morning of January 1, 1999, Terry went to Marlene's home. They had an argument about a car. Terry took Marlene's car keys and tore the telephone in the home from the wall. He drove away in the car.

The next day Terry returned. He and Marlene talked about their marriage. He told Marlene he wanted to come back, but had complications with Audra. Marlene told him to do what he wanted, to come home and they would "work it out." Marlene was asked, "But then did you have

---

1. References to statutes are to RSMo 1994 unless stated otherwise.

some type of altercation about you getting the keys?" She answered, "Yes, sir." Marlene was asked the following questions and gave the following answers:

Q. Tell us briefly about that? [sic]

A. And he said, well, all I need is a week to think about it, and I said all right, well, he goes out, okay, he had to drive up in my car, because he goes in the bedroom and he gets his T.V., it's a portable T.V., he takes it out there and puts it in his car, and while he's out there doing that, I look around and I notice his leather jacket sitting on the table, in the chair, so I go there and I look through his leather jacket and I find my car keys.

A. What did you do with them?

Q. I hid 'em.

When Terry returned to the house, Marlene refused to give him the car keys. She ran out the door. Terry chased her. He caught her and they went back inside the house. She still refused to give him the keys. Terry began knocking over furniture and throwing things. Marlene ran to a bedroom and closed the door. Terry opened the door and "punche[d] a hole in the wall." She finally gave him the keys and he left.

Terry returned that evening. He had his and Marlene's son, Josh, with him. They again argued about the car. About 15 minutes after Terry and Josh arrived, defendant and Billy Curtwright arrived. The argument continued. Defendant became a participant.

There was testimony that defendant kicked Terry in the face. There was other evidence that Terry struck the first blow. After Terry hit defendant, there was a gunshot. Josh Busby told the jury, "I just heard it and I saw the fire of the barrel, I never saw a gun." He said the "fire of the barrel" came from defendant's jacket. Terry went to the door. He asked for someone to take him to the hospital. He got in the car and drove away alone. He was later found in his car about a block from Marlene's house. He appeared to be unconscious. He was later pronounced dead. The cause of death was a gunshot wound to the abdomen.

Defendant presents two points on appeal. Point I asserts the trial court erred in accepting the jury verdict and sentencing defendant for involuntary manslaughter and armed criminal action and "plainly erred in instructing the jury on these offenses" because there was not sufficient evidence from which a rational juror could find, beyond a reasonable doubt, that defendant recklessly caused the death of Terry Busby. Alternatively, defendant's Point II contends the trial court committed plain error "in submitting the lesser included offenses of involuntary manslaughter and the corresponding armed criminal action without instructing the jury as part of the manslaughter instruction, that if it found that [defendant] was not guilty of second degree murder because he had acted in self-defense, the jury was required also to acquit him of involuntary manslaughter."

■ Although Point I complains that the trial court erred in accepting the jury verdict for involuntary manslaughter and armed criminal action, no objection was posed to the verdict at the time it was received by the trial court, nor was the acceptance of the jury verdict asserted as a ground for new trial in defendant's motion for new trial. Arguably, defendant's challenge to the trial court's acceptance of the verdicts on Counts I and II was not raised in the trial court and is, therefore,

not preserved for appellate review.[2]  *Johnson v. State,* 925 S.W.2d 834, 836 (Mo. banc 1996); *Forbes v. Forbes,* 987 S.W.2d 468, 469 (Mo.App.1999); *State Farm Mut. Auto. Ins. Co. v. Sommers,* 954 S.W.2d 18, 20 (Mo.App.1997).  Nevertheless, an *ex gratia* review of the record on appeal reveals sufficient evidence for a fact-finder to have concluded beyond a reasonable doubt that defendant recklessly caused the death of Terry Busby.[3]

Defendant went to the house where the shooting occurred carrying a loaded handgun in his jacket pocket.  The gun he was carrying had been removed from under a mattress at defendant's residence.  Defendant knew the gun was loaded but did not check the safety.  His hands were in the pockets of the jacket he was wearing.  The gun was in the right pocket of the jacket.  Josh Busby testified that his father, Terry Busby, stood up and hit defendant in the face and the gun discharged.  Josh saw the fire of the gun barrel come from defendant's jacket.  Defendant told Billy Curtwright it was an accident.

The jury could have found beyond a reasonable doubt that defendant was reckless in engaging in a fight while he had a loaded gun in his jacket pocket; that defendant's movements during the fight caused the gun to discharge, thereby causing the death of Terry Busby.  Point I is denied.

■■■■ Point II is directed to the verdict-directing instruction for involuntary manslaughter.  Defendant contends the instruction was erroneous because the instruction did not tell the jury if defendant acted in self-defense, the jury was required to acquit him.  Defendant did not object to the instruction as required by Rule 28.03.  Thus, review of Point II is limited to determining if the giving of that instruction was plain error.  *State v. Hayes,* 23 S.W.3d 783, 788 (Mo.App.2000).

"Plain error review of instructional error is warranted where an error so substantially affects the rights of an accused that manifest injustice results if it is left uncorrected."  *State v. McCoy,* 971 S.W.2d 861, 864 (Mo.App. W.D.1998).  "Instructional error constitutes plain error when it is clear the trial court so misdirected or failed to instruct the jury so that it is apparent the error affected the verdict."  *State v. Beeler,* 12 S.W.3d 294, 300 (Mo. banc 2000).

*Id.*

The verdict-instructing instructions given pursuant to Count I were for the charged offense of murder in the second degree and the lesser-included offenses of voluntary manslaughter and involuntary manslaughter.  The instructions for second-degree murder and voluntary manslaughter told the jury that in order to find defendant guilty, it was required to find that defendant did not act in lawful self-defense.  A separate instruction defined conduct that constituted self-defense.  The involuntary manslaughter instruction, however, did not require the jury to find defendant did not act in lawful self-defense in order to be found guilty of involuntary manslaughter.  It stated:

As to Count I, if you do not find the defendant guilty of voluntary manslaughter, you must consider whether he is guilty of involuntary manslaughter.

---

2.  Even if it could be argued that the issue was presented to the trial court, it did not appear in defendant's motion for new trial.  *See State v. Guidorzi,* 895 S.W.2d 225, 228 (Mo.App. 1995).

3.  § 565.024 provides that "[a] person commits the crime of involuntary manslaughter if he: (1)[r]ecklessly causes the death of another person;. . . ."

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 2, 1999, in the County of Pemiscot, State of Missouri, the defendant caused the death of Terry Lee Busby by shooting him, and

Second, that defendant recklessly caused the death of Terry Lee Busby, then you will find the defendant guilty under Count I of involuntary manslaughter.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of involuntary manslaughter.

In determining whether the defendant recklessly caused the death of Terry Lee Busby, you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.

. . .

This language is followed by explanations of the range of punishment the jury was to consider if it found defendant guilty of involuntary manslaughter.

Defendant argues that instructing the jury that self-defense was a valid defense to murder in the second degree and voluntary manslaughter, but not instructing the jury that self-defense was a valid defense to involuntary manslaughter, was inconsistent; that it constituted plain error. De-

fendant relies on *State v. Hayes, supra,* as support for this argument.

*Hayes* involved an altercation between neighbors that resulted in one shooting the other. The one who was shot died as a result of the gunshot wound. The jury in *Hayes* was instructed on murder in the second degree and the lesser-included offense of involuntary manslaughter. The second-degree murder instruction included the direction that to find the accused guilty, the jury was required to find "that [the accused] did not act in lawful self-defense." *Id.* at 789. As in this case, what constituted lawful self-defense was defined in another instruction. The involuntary manslaughter instruction did not instruct that for the accused to be found guilty, the jury had to find he did not act in lawful self-defense.

*Hayes* held, under its facts, relying on *State v. Beeler, supra* :[4]

[W]e find that the trial court plainly erred in submitting the second degree murder and involuntary manslaughter instructions to the jury without including in the manslaughter instruction the direction that if the jury determined Hayes was not guilty of second degree murder because he acted in self-defense, the jury was required to acquit him of involuntary manslaughter. However, although Hayes argues that *Beeler* is substantially identical to the present case, we find that *Beeler* is distinguishable from this case in an important respect. The State in *Beeler* conceded that self-defense was the only way to acquit Beeler of second degree murder. *Id.* at 301. In *Beeler* "[n]either the state nor defendant argued that the real issue for the jury to decide was the nuance in differ-

---

4.  *Beeler* held that reckless conduct required to find an accused guilty of involuntary manslaughter was not inconsistent with an intentional act of defending one's self if the one so acting used reasonable force. 12 S.W.3d at 299. Thus, self-defense can be a valid defense to a charge of involuntary manslaughter.

ence between a homicide involving a knowing state of mind and a homicide resulting from a conscious disregard of risk." *Id.* By contrast, in the present case, it is not as certain that the jury acquitted Hayes by reason of self-defense. As the State points out, the jury could reasonably have found that [the victim] reached into Hayes' truck and slapped him with an open hand, and that Hayes responded by shooting [the victim]. Under *Beeler,* the jury could reasonably have found that Hayes was not guilty of second degree murder because he did not act with the "purpose to cause serious physical injury or to cause the death of" [the victim], but that he acted with a conscious disregard of a substantial and unjustifiable risk of death to the victim and that the force used was a gross deviation from that force reasonably necessary to protect himself. Therefore, we find that remand and retrial on involuntary manslaughter is the appropriate remedy in the present case.

*Id.* at 792.

There was conflicting evidence about the altercation between defendant and Terry Busby. There was testimony that defendant started the battle by kicking Terry in the face, but there was no evidence of bruising on Terry's face. A witness who testified at trial that defendant kicked Terry Busby in the face said in earlier statements that Terry Busby started the fracas by standing up and hitting defendant in the face; that defendant was knocked backward; that Terry started toward defendant again. The witness told police and the prosecuting attorney that after Terry hit defendant in the face, defendant tried to get something out of his pocket; that

Terry was continuing to advance toward defendant.

The 911 report that Terry Busby's wife made was that Terry started the fight by hitting defendant in the face; that defendant grabbed a gun and shot Terry. The 911 operator was told that Terry started the fight.

Defendant testified. He told of his argument with Terry Busby. He said Terry got up from the chair where Terry was sitting and punched him in the face.

■ Mindful that a jury may draw such reasonable inferences from the evidence as the evidence will permit and may believe all, part or none of the testimony of any witness, *State v. Hineman,* 14 S.W.3d 924, 927 (Mo. banc 1999), there was sufficient evidence for the jury to conclude that defendant shot Terry Busby in self-defense; that Terry Busby hit defendant in the face and was advancing in a threatening manner; that defendant, believing he was in imminent danger of harm, shot Terry Busby. The trial court erred in not including as part of the instruction on involuntary manslaughter that the jury had to find defendant did not act in lawful self-defense in order to find defendant guilty of that offense.

■ If the jury believed defendant was in reasonable fear for his safety, failure to instruct the jury on self-defense as a defense with respect to involuntary manslaughter would affect the verdict it rendered. The trial court's misdirection or failure to instruct the jury in this manner, under these circumstances, amounted to manifest injustice and constituted plain error.[5] *State v. Hayes, supra,* at 788. Point II is granted. The judgment is affirmed as to Count III. It is reversed and re-

---

5. The record reflects the jury told the court during the course of deliberations that it "[n]eed[ed] an understanding of all charges against [defendant]." The trial court responded that the jury had been given all instructions that could be provided.

manded for a new trial for involuntary manslaughter on Count I and the related charge of armed criminal action on Count II.

GARRISON, P.J., and RAHMEYER, J., concur.