STATE of Missouri, Respondent,

v.

Andrew D. REYNOLDS, Appellant.

No. 24078.

Missouri Court of Appeals, Southern District, Division Two.

April 24, 2002.

Douglas P. Roller, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Att. Gen. & Linda Lemke, Asst. Att. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Chief Judge.

Andrew D. Reynolds ("Defendant") was charged by the State with Count I, second degree murder, § 565.021.1(1), and Count II, armed criminal action, § 571.015.1, after the stabbing death of Jim Lindeman ("Lindeman").[1] Following a jury trial, Defendant was convicted, as a prior offender, § 558.016, of voluntary manslaughter, § 565.023, and armed criminal action in

---

1. In using the victim's last name only in this opinion we mean no disrespect.

the Circuit Court of Dent County, Missouri.[2] The trial court sentenced Defendant to consecutive terms of fifteen years for voluntary manslaughter and thirty years for armed criminal action.

■ In his second of four points raised in this appeal, Defendant premises trial court error in failing to instruct the jury that Defendant could be acquitted of voluntary manslaughter on the basis of self-defense. We agree. The second point is dispositive of this appeal. We reverse the judgment and sentence of the trial court and remand for a new trial, consistent with this opinion.[3]

On the evening of September 3, 1999, Defendant, Troy Scheske, Amanda Miller, and Donna Gore were out together. They traveled in Donna's truck and eventually went to a bar in Cuba, Missouri, called "Loose Ends." While at the bar, Defendant saw Lindeman. Defendant and Lindeman had known each other since grade school. In fact, Defendant and Lindeman had played a round of golf earlier in the day. Defendant, Troy, Amanda, and Donna socialized with Lindeman until the bar closed at approximately 1:30 a.m., September 4, 1999.

As everyone was leaving the bar, but prior to entering Donna's vehicle, Lindeman invited Defendant, Troy, Amanda, and Donna to his house. Defendant informed Lindeman that he needed to go pick up his car at Donna's house, which was a twenty to thirty minute drive from Cuba. Lindeman told Defendant to forget about his car and come to his house and continue partying. However, Defendant was adamant that he had to go and pick up his car. Lindeman called Defendant a "baby" and the two argued. In time they cursed each other and called each other names. The recount of what happened thereafter varied considerably.

Defendant testified that Lindeman became increasingly belligerent and followed Defendant and Troy as they walked toward Donna's vehicle. Defendant stated he became scared when Lindeman approached him in an aggressive manner, threatening to attack Defendant. He stated he was aware that Lindeman was skilled at martial arts and he had had several prior physical altercations with him.[4] Defendant related that he told Lindeman to back off and pulled out a knife in an attempt to keep Lindeman away. Defendant then put the knife in his back pocket and turned to walk away. It was then that Lindeman grabbed Defendant by the neck and shoved him backwards. According to Defendant, Lindeman then grabbed Defendant's knife from his back pocket and kicked Defendant. While Defendant tried to fend off Lindeman's physical attack, Defendant regained control of the knife and stabbed Lindeman twice in the chest. One of the stab wounds penetrated Lindeman's heart, ultimately causing his death.[5]

---

2. Statutory references are to RSMo 1994, unless otherwise set out.

3. Defendant's second point on appeal actually raises three sub-points of trial court error, discussed below. Sub-point two, alone, is meritorious. We note that "[s]eparate claims of error should be stated in separate points." *State v. Craig,* 33 S.W.3d 597, 601 n. 1 (Mo. App.2000). *See Shoemaker v. Ekunno,* 960 S.W.2d 527, 531 (Mo.App.1998). While sub-points one and three need not be reviewed for

reasons explained in footnote 8, *infra,* we will exercise our discretion to review sub-point two for reasons of judicial economy and to prevent manifest injustice. *See State v. Albanese,* 920 S.W.2d 917, 922–23 n. 2 (Mo.App. 1996); *see also* discussion of Rule 28.03 and Rule 30.20, *infra.*

4. A defense witness also testified that Lindeman had previously assaulted the defendant.

5. An autopsy revealed that Lindeman had no other injuries.

Lindeman and Defendant were taken to the Phelps County Memorial Hospital Emergency Room. Defendant was treated for a cut to the palm of his hand. Afterwards, he was taken to the Cuba Police Department and questioned by Sergeant Paul Crow ("Sgt. Crow"). Prior to questioning him, Sgt. Crow advised Defendant of his Miranda rights.[6]

Defendant admitted to Sgt. Crow that he had stabbed Lindeman, but explained that Lindeman had first grabbed him by the throat. As a consequence, Defendant said he became "extremely scared."

At trial, Amanda Miller testified that she observed the argument between Defendant and Lindeman, but only saw Lindeman kick at Defendant after he was stabbed. Troy Scheske testified that he observed Defendant slide a knife out of his pocket to show Lindeman before there was any physical contact between the two men. Claude Riley, a bouncer at the bar, testified that he observed the altercation from a distance and did not see Lindeman do anything "physical" to Defendant, but did see Defendant stab Lindeman. However, Kirsten Roach and Vera Valley both testified that they had witnessed the fight from across the street and observed Lindeman strike Defendant before he was stabbed. Additionally, two other defense witnesses testified as to Lindeman's bad reputation for turbulence and violence in the community.

The trial court gave a verdict-directing instruction pursuant to Count I, for the charged offense of murder in the second degree and as best we discern gave, on its own, a verdict-directing instruction on the lesser-included offense of voluntary manslaughter.[7]

The verdict-directing instruction for second-degree murder (No. 5), told the jury that in order to find Defendant guilty the jury was required to find that Defendant did not act in lawful self-defense. A separate instruction (No. 6), defined conduct that constituted self-defense.

However, unlike the verdict directing instruction for second-degree murder, the verdict-directing instruction on voluntary manslaughter instruction (No. 7) had no such self-defense component. After deliberation, the jury returned a verdict acquitting Defendant of the charge of second degree murder, but finding him guilty of voluntary manslaughter and armed criminal action.

Defendant's second sub-point on appeal asseverates that the trial court "erred in failing to instruct the jury that Defendant could be acquitted of voluntary manslaughter on the basis of self-defense."

■ In our review of the record, we first observe that Defendant's trial counsel did not pose an objection to the form of the verdict directing instruction for murder in the second degree. As to the self-defense instruction, Defendant's trial counsel stated that "I have no objections to the self-defense instruction." When the trial court inquired whether he had any objections to the verdict directing instruction for voluntary manslaughter, he replied, "I will not object...." Additionally, when the trial court inquired as to whether Defendant's trial counsel had "[a]ny other objections or anything else?", he answered, "No your Honor." Lastly, in response to the trial court's question whether defense counsel had "[a]ny other instructions that the defense would like to submit that the defense has not tendered to the court?",

---

**6.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**7.** Additionally, the trial court gave a verdict-directing instruction pursuant to Count II's charge of armed criminal action.

Defendant's trial counsel responded, "No sir."

In view of the foregoing, we determine Defendant waived any claim of error based either on the verdict directing instruction on voluntary manslaughter or the trial court's ostensible failure to give an instruction on involuntary manslaughter. *See* Rule 28.03.[8]

■ Nevertheless, "claims of error not preserved under Rule 28.03 may still be reviewed for plain error if manifest injustice would otherwise occur." *State v. Hawkins,* 58 S.W.3d 12, 16 (Mo.App.2001); *State v. Wurtzberger,* 40 S.W.3d 893, 898 (Mo. banc 2001). Accordingly, in our review, we must make a determination as to whether the trial court's submission of a verdict-directing instruction on voluntary manslaughter, which lacked a self-defense component, constituted plain error under Rule 30.20. *State v. Gaskins,* 66 S.W.3d 110, 113 (Mo.App.2001); *State v. Hayes,* 23 S.W.3d 783, 788 (Mo.App.2000).

■ "[A]n assertion of plain error under Rule 30.20 places a much greater burden on a defendant than an assertion of prejudicial error." *State v. Deckard,* 18 S.W.3d 495, 497 (Mo.App.2000).

> Plain error review of instructional error is warranted where an error so substantially affects the rights of an accused that manifest injustice results if it is left uncorrected. *State v. McCoy,* 971 S.W.2d 861, 864 (Mo.App.1998). Instructional error constitutes plain error when it is clear the trial court so misdirected or failed to instruct the jury so that it is apparent the error affected the

verdict. *State v. Beeler,* 12 S.W.3d 294, 300 (Mo. banc 2000).

*Hayes,* 23 S.W.3d at 788; *Gaskins,* 66 S.W.3d at 113.

■ "Section 563.031 authorizes a person to use physical force upon another person when and to the extent he believes such force to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person." *State v. Morrow,* 41 S.W.3d 56, 59 (Mo.App.2001); *see also State v. Chambers,* 671 S.W.2d 781, 783 (Mo. banc 1984). "A defendant has the burden of injecting the issue of self-defense into the case by substantial evidence." *Morrow,* 41 S.W.3d at 59; *State v. Powers,* 913 S.W.2d 138, 141 (Mo.App.1996); § 563.031.4. "If substantial evidence putting self-defense in issue is presented, the trial court must instruct on self-defense." *Morrow,* 41 S.W.3d at 59; *Albanese,* 920 S.W.2d at 923; *see also* MAI CR 3d 306.06, notes on use number 2 (9–1–99); *State v. Johnson,* 54 S.W.3d 598, 601, n. 2 (Mo.App.2001).

■ "In determining whether a self-defense instruction should have been submitted to the jury, the evidence is viewed in the light most favorable to defendant's theory of self-defense." *Morrow,* 41 S.W.3d at 59; *Albanese,* 920 S.W.2d at 923; *Chambers,* 671 S.W.2d at 783. "Moreover, where the evidence conflicts, it is a question of fact for the jury to determine whether the accused acted in self-defense." *Albanese,* 920 S.W.2d at 923. "Manifest injustice results when a defendant meets his burden of injecting the issue of self-defense into the case but

---

**8.** Rule 28.03 sets out, in pertinent part:

Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto

before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Rule references are to Missouri Court Rules 2001.

the trial court does not submit an instruction on the issue to the jury regardless of whether the defendant requests the instruction." *Morrow*, 41 S.W.3d at 59.

■ A jury may be instructed on both self-defense and voluntary manslaughter since "[u]nlike self-defense, there is no requirement that the defendant act reasonably to have his intentional killing reduced from murder to voluntary manslaughter." *State v. Redmond*, 937 S.W.2d 205, 209 (Mo. banc 1996).

■ In the present case, there was conflicting evidence at trial regarding the altercation between Defendant and Lindeman. As previously set out, several witnesses testified that there was no physical contact between Lindeman and Defendant before Lindeman was stabbed. Defendant testified as to Lindeman's threatening manner toward him which culminated in Lindeman's assault on Defendant. Other witnesses testified that they observed Lindeman strike Defendant before the stabbing occurred. We are mindful that where the evidence conflicts the jury determines whether the accused acted in self-defense. *Albanese*, 920 S.W.2d at 923. We also note that "a jury may draw such reasonable inferences from the evidence as the evidence will permit and may believe all, part or none of the testimony of any witness." *Gaskins*, 66 S.W.3d at 115. Under verdict-directing instruction No. 7, given by the trial court, if the jury believed that Defendant was in reasonable fear for his safety and acted in self defense, then the trial court's failure to instruct the jury on self-defense with reference to voluntary manslaughter would certainly have affected their ability to render their verdict on that basis. *See Albanese*, 920 S.W.2d at 924; *see also* parallel discussion in *Gaskins*, 66 S.W.3d at 115 (relating to self-defense as a valid defense to the charge of involuntary manslaughter).

The trial court's failure to instruct the jury on the issue of self-defense, under these circumstances, amounted to a manifest injustice and constituted plain error and requires reversal of Defendant's conviction on the charge of voluntary manslaughter. *See Albanese*, 920 S.W.2d at 924; *see also Gaskins*, 66 S.W.3d at 115. Sub-point two of Point Two has merit. Our reversal and remand of Defendant's conviction of voluntary manslaughter also requires reversal and remand of his conviction of armed criminal action, as conviction of the latter crime requires the commission of an underlying felony. *State v. Weems*, 840 S.W.2d 222, 228 (Mo. banc 1992).[9]

The judgment is reversed and remanded for a new trial for voluntary manslaughter on Count I and the related charge of armed criminal action on Count II. *State v. Gaskins*, 66 S.W.3d at 115–16.

---

9. We need not review Defendant's first sub-point premising trial court error in giving an instruction on voluntary manslaughter in the first instance. Nor do we review his third sub-point, postulating trial court error on the basis that the trial court failed to instruct the jury on involuntary manslaughter. As previously set out Defendant's trial counsel neither made specific objections to the giving of the voluntary manslaughter instruction nor did Defendant's trial counsel request an instruction on involuntary manslaughter. *See supra.* More importantly, the resolution of these two sub-points would require an analysis of facts and circumstances existing at the time of this trial, which will likely be different when re-tried. *Craig*, 33 S.W.3d at 602; *State v. Battle*, 32 S.W.3d 193, 198 (Mo.App.2000); *see also Hayes*, 23 S.W.3d at 793.